IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Edward L. Morris,<br><br>Petitioner,<br><br>v.<br><br>Warden Charles Burton,<br><br>Respondent. | ) | Case No. 1:21-cv-00354-DCC<br><br><br><br>**ORDER** |

Petitioner, a state prisoner proceeding pro se, is seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. ECF No. 1. Respondent filed a Motion for Summary Judgment and Return and Memorandum on March 29, 2021. ECF Nos. 9, 10. Petitioner filed his own Motion for Summary Judgment, a Response in Opposition to Respondent's Motion for Summary Judgment, and a Motion to Amend the Petition. ECF Nos. 21, 22. Respondent filed Responses in Opposition to the Motion to Amend and to Petitioner's Motion for Summary Judgment. ECF Nos. 26, 27.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings and a Report and Recommendation ("Report"). On September 7, 2021, the Magistrate Judge issued a Report recommending that Respondent's Motion for Summary Judgment be granted and the Petition be denied, that Petitioner's Motion for Summary

Judgment be denied, and that Petitioner's Motion to Amend be denied. ECF No. 28. Petitioner filed objections to the Report, and Respondent filed a Reply. ECF Nos. 36, 40.

**BACKGROUND**

Petitioner was indicted on charges of armed robbery, murder, and possession of a weapon during the commission of a violent crime in the Horry County Court of General Sessions. ECF No. 9-1 at 81–84. Following negotiations with the solicitor's office, Petitioner, represented by J.M. Long, III ("plea counsel"), pled guilty to murder in exchange for a 30-year sentence. ECF No. 9-1 at 1–14. Petitioner did not file a notice of appeal.

Petitioner filed an application for post-conviction relief ("PCR") on October 12, 2016. ECF No. 9-1 at 16–23. A hearing was held on the application on November 30, 2017. ECF No. 9-1 at 33–67. Petitioner was represented at the hearing by Steven W. Fowler ("PCR counsel"). By order dated March 6, 2018, the PCR court denied Petitioner's PCR application. ECF No. 9-1 at 69–80.

Petitioner's counsel filed a *Johnson*[1] petition appealing the PCR court's order by filing a petition for a writ of certiorari to the Supreme Court of South Carolina and a request to withdraw as counsel. ECF No. 9-2. Petitioner was given an opportunity to raise

[1] A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief; a brief filed pursuant to *Anders v. California,* 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim. *See Johnson v. State,* 364 S.E.2d 201 (S.C. 1988).

additional arguments but did not file a pro se petition. ECF No. 9-3, 9-5. The South Carolina Court of Appeals denied the petition and granted counsel's request to withdraw. ECF No. 9-5. Petitioner filed this action on February 1, 2021.[2] ECF No. 1-2.

## APPLICABLE LAW

### *Standard of Review*

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

[2] *See Houston v. Lack,* 487 U.S. 266 (1988) (stating a prisoner's pleading is deemed filed at the moment of delivery to prison authorities for forwarding to district court).

***Habeas Corpus***

Petitioner's claims are governed by 28 U.S.C. § 2254(d), which provides that his petition cannot be granted unless the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal

habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *Id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. ECF No. 9-1 at Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged

constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 298 (1989).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel

relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this actual innocence standard, the petitioner's case must be truly extraordinary. *Carrier*, 477 U.S. at 496.

***Ineffective Assistance of Counsel***

Where allegations of ineffective assistance of counsel are made, the question is "whether counsel's conduct so undermined the proper functioning of the adversarial

process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). First, a petitioner must show that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. *Id*. at 687–88. Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "The standards created by *Strickland* and § 2254(d) are both highly deferential . . . and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562U.S. 86, 105 (2011). In applying § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

In the specific context of a guilty plea, to satisfy the prejudice prong of *Strickland*, a prisoner must show that "there is a reasonable probability that, but for counsel's errors, [the prisoner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Supreme Court further explained,

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn,

> will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial . . . . As we explained in *Strickland v. Washington*, *supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id*., 466 U.S., at 695.

*Hill*, 474 U.S. at 59–60.

**DISCUSSION**

Petitioner raised one ground in his Petition arguing that plea counsel was ineffective for failing to object to the plea court's "misinformation concerning the petitioner['s] mandatory 30-year sentence for murder [which] does not fall under the 85 percent eligibility of parole." ECF No. 1-1 at 1–4. The Magistrate Judge recommends granting summary judgment as to this ground, and Petitioner objects. The Magistrate Judge provided a thorough recitation of the procedural history and the relevant law, including the summary judgment standard and the habeas corpus standard of review, which the Court incorporates into this Order by reference. As Petitioner has filed objections, this Court's review of the record, the Report, and the applicable law is de novo.

***Ground One***

Respondent argues that Ground One is procedurally defaulted. ECF No. 9. Petitioner asserts that he can establish cause for the procedurally barred claims of ineffective assistance of trial counsel under *Martinez v. Ryan*, 566 U.S. 1 (2012). ECF No. 21. The Court agrees that Ground One is procedurally barred as it was not raised in

his PCR application or to the Supreme Court of South Carolina in his petition for a writ of certiorari. Accordingly, this ground has been defaulted absent a showing of cause and prejudice.

*Cause and Prejudice*

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or a petitioner's efforts to comply with the state's procedural rule. *Carrier*, 477 U.S. at 488; *but see Martinez*, 566 U.S. at 9 ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."). Here, as stated, Petitioner argues that he can establish cause for any procedurally barred claims of ineffective assistance of trial counsel under *Martinez*.

In *Martinez*, the Supreme Court held,

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

566 U.S. at 14. Accordingly, Petitioner may establish cause for the defaulted grounds if he demonstrates that (1) his PCR counsel was ineffective and (2) the underlying ineffective assistance of trial counsel claim is a substantial one, i.e., it has some merit.

Here, Petitioner's claim lacks merit. Because Ground One was not adjudicated on the merits in any state court, there are no state court adjudications of those claims to which this Court could defer. Therefore, this Court reviews the merits of the claim de novo. *See Cone v. Bell*, 556 U.S. 449, 472 (2009).

During Petitioner's plea colloquy, the following exchange took place,

> Solicitor: Your Honor, this is the State of South Carolina versus Edward Leon Morris. It is a true-billed indictment, 2016 GS 26 956, charging him with the offense of murder.
> It comes before the Court, Your Honor, as a negotiated plea to thirty years.
>
> ***
>
> The Court: Have you explained to your client the charge he is facing, the possible punishment, as well as the consequences of the plea?
>
> Mr. Long: I have, Your Honor.
>
> ***
>
> The Court: Sir, you have negotiated a sentence for thirty years. Do you understand that?
>
> Defendant: Yes, maam.
>
> The Court: This is a violent and a most serious offense. Do you understand what those two classifications mean to you?

***

> Defendant: Violent means it has eighty-five percent[3]
>
> The Court: And what does most serious mean to you?
>
> DEFENDANT: Most serious means if I get another charge . .
>
> ***
>
> The Court: This is now a most serious strike, and in the future if you commit another serious or most serious offense the Solicitor can seek for you and serve you with the possibility of life without parole. Do you understand that?
>
> Defendant: Yes, maam.
>
> The Court: If after hearing the facts and your prior record I cannot accept this, I will allow you to withdraw your plea. Do you understand that?
>
> Defendant: Yes, maam.
>
> The Court: I cannot give you any more time than that and I also cannot give you any less time. Do you understand?
>
> Defendant: Yes, maam.

ECF No. 9-1 at 4–6.

---

[3] As noted by the Magistrate Judge, Petitioner's reference to 85 percent appears to indicate that he believed he was eligible for work release after serving a certain portion of his sentence. *See* S.C. Code Ann. § 24-13-125. However, under the relevant law, Petitioner "would not be eligible for an early release after pleading guilty to murder." *See Dean v. State*, 2015 WL 1481686, at *2 (S.C. Ct. ECF No. 9-1 at Apr. 1, 2015) (citing S.C. Code Ann. § 24-13-125(A) (finding one convicted of murder is not eligible for work release)).

Based on the foregoing, Petitioner argues here that plea counsel informed him that he would "only have to do 85 of the sentence" and would "be entitled to work time credit." ECF No. 21-1 ¶ 5. He contends that if he had been informed during his plea that the charge of murder does not allow for early release under South Carolina law, he would have withdrawn his plea and proceeded to trial. ECF Nos. 21; 21-1 ¶¶ 5, 15, 17–18. Petitioner asserts that he learned he was not eligible for early release once he was in the South Carolina Department of Corrections. ECF No. 21-2 ¶¶ 20–21.

"In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence at the PCR hearing." *Suber v. State*, 640 S.E.2d 884, 886 (S.C. 2007). "Specifically, the voluntariness of a guilty plea is not determined by the examination of a specific inquiry made by the sentencing judge alone, but is determined from both the record made at the time of the entry of the guilty plea, and also from the record of the PCR hearing." *Roddy v. State*, 528 S.E.2d 418, 420 (S.C. 2000).

At the PCR hearing, Petitioner testified as follows,

> Q: You state you received erroneous advice from your attorney. Can you tell the Court about that. What do you mean by that?
>
> A: What I mean by wrong advice was that when before the plea hearing and when I talked to my lawyer, he was telling me that with the 30 years that I had a possibility, it could be a chance that I would get out early. And he said if we were to go to trial, that there wasn't—they had evidence that will tie me to the murder case or whether. And he said we was—like I was going to lose trial, and they would have given me life.
> So with that information when he tell me they would

> have given me life, if we were to go to trial and we were to lose, like I didn't want to plead to the 30 years. But I felt like I didn't have no choice but to plead to the 30 years with the advice that he telling me like the chances I would have had of getting out early in case the law were to change, whatever, later on down the line.
>
> Q: So why specifically do you think that was erroneous advice?
>
> A: Because even though with the 30 years, like it would—there is not chance—there is no chance that they will change the law for me to get out early. And with me thinking about going to trial and losing trial to get life, you know, like I was scared. You know, I wasn't going to go to trial and just say—and when he say we wouldn't have won trial, that we had a possibility, a good possibility, we would lose, so . . .
>
> Q: And your claim in your statement was that—so that advice was not true in your opinion; is that correct?
>
> A: Correct.
>
> ***
>
> Q: Isn't it true that at the guilty plea proceeding that you told the Court that you were satisfied with the services of your attorney?
>
> A: Yes, I told him that . . . And at the time I was thinking that they would have took my plea back, and I would have went to trial. And I wouldn't have won trial and get life. So that's why I said that.

ECF No. 9-1 at 39–40, 52.

Therefore, according to Petitioner's testimony at the PCR hearing, he pled guilty because he was concerned about being sentenced to life in prison. He further testified that he was informed he could be released early only if there was a change in the law. There is no testimony at the PCR hearing that supports Petitioner's argument that he would have proceeded to trial if he had known that he is not eligible for early release. Thus, he has failed to demonstrate that his underlying claim is a substantial one. Accordingly, summary judgment in favor of Respondent is appropriate.

Turning to Petitioner's objections, he argues that the issue is not that he misunderstood the maximum penalty, but rather that he had been misinformed that the 30-year sentence was required to be served day-for-day. *See, e.g.*, ECF No. 36 at 3 n.6. However, as noted by the Magistrate Judge, at the PCR hearing, Petitioner testified that he understood that he would not be released early unless there was a change in the law. Moreover, he stated that he pled guilty to avoid a potential life sentence that he could have received if convicted at trial. Accordingly, this objection is overruled.[4]

Petitioner further objects to the Magistrate Judge's determination that there is no evidence that any party was considering a plea deal to a charge other than murder. ECF No. 36 at 4. He argues that the fact that no one corrected him during the plea colloquy regarding his comment about 85 percent is implicit proof that they were considering other

[4] To the extent Petitioner intends to bring a claim that he did not understand the maximum sentence, the Court agrees with and adopts the reasoning of the Magistrate Judge. *See* ECF No. 28 at 21–22.

charges that would have allowed him to do 85 percent of the sentence. The Court disagrees with Petitioner's unsupported view that plea counsel's and the plea court's silence is evidence that there was another plea offer on the table. As noted by the Magistrate Judge, trial counsel testified that the parties had discussed a plea based on a manslaughter charge, however, the solicitor's office was "steadfast it would be a plea to murder or go to trial." *See* ECF No. 9-1 at 57–58. Moreover, while Petitioner may have erroneously been informed he would be eligible for early release, there is no evidence in the record that Petitioner was pleading guilty to anything but the murder charge.

Finally, in his objections, Petitioner asserts that the Magistrate Judge applied the wrong legal standard. ECF No. 36 at 5–10. He principally relies on the Fourth Circuit's decision in *Owens v. Stirling*, 967 F.3d 396, 423 (4th Cir. 2020), *cert. denied,* 141 S. Ct. 2513 (2021).

In *Owens*, the Fourth Circuit held that other circuits

> have reasoned that a state prisoner satisfies *Martinez* by showing, *first*, that initial postconviction counsel performed deficiently, under the first prong of *Strickland*, by failing to exhaust the underlying ineffective-assistance-of-trial-counsel claim, but not that said counsel's deficient performance was prejudicial, under the second prong of *Strickland*; and *second*, that the underlying claim is substantial, or has some merit, with respect to both prongs of *Strickland*. *Id.*; *accord Brown*, 847 F.3d at 513.

*Owens*, 967 F.3d at 423; *see also Workman v. Superintendent Albion SCI*, 915 F.3d 928, 943 (3d Cir. 2019) ("Once procedural default is excused, our review of a petitioner's claim

is de novo because the state court did not consider the claim on the merits. Our review of Workman's claim for ineffective assistance of trial counsel proceeds under the two prongs of *Strickland v. Washington*, which require Workman to show both that counsel's performance was deficient and that he was prejudiced as a result. (internal quotation marks and footnotes omitted)).

Here, the Court finds the Magistrate Judge applied the appropriate standard. Even assuming that PCR counsel was ineffective for failing to raise this ground at PCR, as discussed above, Petitioner's testimony makes it clear that the underlying claim is not substantial. Accordingly, this objection is overruled.[5]

***Motion to Amend***

As stated above, Petitioner filed a Motion to Amend his Petition, and Respondent filed a Response in Opposition. ECF Nos. 22, 26. The Magistrate Judge recommended denying Petitioner's Motion to Amend; Petitioner objects. ECF Nos. 28; 36.

The Magistrate Judge provides a thorough recitation of the applicable law, which the Court incorporates by reference. In his Motion, Petitioner seeks to add 10 grounds to his Petition. Upon de novo review of the record, the Report, and the applicable law, the Court agrees with the recommendation of the Magistrate Judge and denies the Motion to Amend.

[5] To the extent Petitioner takes issue with the Magistrate Judge's analysis in footnote 7 of the Report, the Court finds that any error is harmless based on the undersigned's reasoning above.

It is undisputed that the proposed amended grounds are procedurally defaulted. To the extent Petitioner intends to rely on *Martinez*, he has failed to demonstrate that he has an underlying substantial claim. With respect to Grounds Two and Three, the Court agrees with the Magistrate Judge that they raise the same substantive issues presented in Ground One, which this Court has addressed.

With respect to Grounds Four through Six, there is evidence in the record that plea counsel discussed the elements of both murder and manslaughter charges and potential defenses with Petitioner. *See* ECF No. 9-1 at 40–42, 57–59. Plea counsel testified that it was his opinion that the State had a strong case as to both charges. While Petitioner apparently disagrees with plea counsel's advice at this time, he has not shown that plea counsel's performance was constitutionally deficient or fell below an objectively reasonable standard.

With respect to Ground Seven, Petitioner's unsubstantiated argument that plea counsel failed to investigate certain matters fails to rise above mere speculation.

With respect to Grounds Eight through Eleven, the Magistrate Judge construes these claims as raising claims under the procedural default analysis. Petitioner does not clarify his grounds in his objections; accordingly, the Court adopts the Magistrate Judge's construction. As noted in the Report, Petitioner fails to establish that any of the rules he cites in these grounds prevented him from raising a self-defense claim in state court or resulted in the claim being defaulted. Accordingly, this is not an instance where a given state procedural rule "was not consistently applied by the state's courts, and that as a

result, [petitioner's] failure to comply with the rule does not prevent him from pursuing his claim here," in habeas proceedings. *Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009). Therefore, the Motion is denied.

***Request for Evidentiary Hearing***

Upon review of Petitioner's request, the Court finds that Petitioner has not shown that the claims for which this additional evidence would be presented rely on "a new rule of constitutional law" or a "factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A). As such, Petitioner has not borne his burden of establishing that he is entitled to an evidentiary hearing.

## CONCLUSION

Therefore, upon de novo review of the record, the Report, and the applicable law, the Court agrees with the recommendation of the Magistrate Judge. Respondent's Motion for Summary Judgment [10] is **GRANTED**. Petitioner's Motions for Summary Judgment and to Amend [21, 22] are **DENIED**.

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

> (c) (2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

> (c) (3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **DENIED**.

**IT IS SO ORDERED**.

s/ Donald C. Coggins, Jr.
United States District Judge

March 22, 2022
Spartanburg, South Carolina